UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| HENRY BANKS, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 3:09-CV-23-TS |
| C. MONTGOMERY, *et al.*, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

*Pro se* Plaintiff Henry Banks, Jr., filed a Complaint pursuant to 42 U.S.C. § 1983 against the medical administrator, two nurses, and an eye doctor at the Westville Correctional Facility where he is incarcerated. The Plaintiff contends that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they delayed his medical care. According to the Complaint allegations, the Plaintiff did not see an eye doctor until six months after his referral to the facility's eye care clinic, and did not receive prescribed medication for an eye infection until another ten days had passed. This matter is before the Court pursuant to its statutory screening obligation. *See* 28 U.S.C. § 1915A.

**SCREENING STANDARD**

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who has deprived him of the right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court will review the *pro se* Plaintiff's Complaint more liberally than it would one that was drafted by a trained attorney. *See Erickson v. Pardus*, 551 U.S. 89, —, 127 S. Ct. 2197, 2200 (2007) (per curiam).

Pursuant to 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6), which provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). The Supreme Court has articulated the factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

The Court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). However, the Court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 129 S. Ct. at 1949. Legal

2

conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 1950–51. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.*

A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). A plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

## DISCUSSION

The Plaintiff asserts that Defendants Nurse Conrad, Nurse Wingo, Dr. Lewton, and C. Montgomery, the Medical Administrator, violated his rights under the Eighth Amendment. A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of medical care cases, the test is whether the defendant was deliberately indifferent to the serious medical needs of a prisoner. *Gutierrez v. Peters*, 111

F.3d 1364, 1369 (7th Cir. 1997).

The Court first considers whether the well-pleaded allegations are sufficient to allow the Court to infer that the Plaintiff's medical condition was "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834 (internal quotations omitted). A medical need is serious if the failure to treat a condition could result in further significant injury or unnecessary and wanton infliction of pain. *Gutierrez,* 111 F.3d at 1373. Circumstances indicative of a serious condition include: the existence of an injury that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention; the presence of a medical condition that significantly affects an individual's activities, or; the existence of chronic and substantial pain. *Id.* The Seventh Circuit has said that the "need for prescription glasses could conceivably constitute a serious medical need." *Franklin v. McCaughtry*, 110 F. App'x 715, 721 (7th Cir. 2004) (citing *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (holding that the need for eyeglasses was a serious medical condition when the inmate needed glasses to avoid double vision and loss of depth perception that resulted from a prior head injury, his daily activities were impaired without them, and he suffered injuries)).

Here, the Plaintiff alleges that he suffered "headaches, running eyes, soreness in eyes," that he had to "forego many of his daily functions and sit in the dark to find partial relief on most days," and that he "could not eat meals, exercise, or shower." (Compl. 7.) The Plaintiff also complains that he "suffered deterioration of eye sight which is permanent damage." (*Id.*) Although is seems doubtful that simply having to function with the prescription the Plaintiff previously used had the effect on the Plaintiff that he claims, the Court must accept these factual allegations as true. Additionally, the Plaintiff may have been referring to the impact of an eye

4

infection. When the Plaintiff finally saw the eye doctor to get a new prescription for eyeglasses he was also diagnosed with an eye infection. How long the Plaintiff had the eye infection is not stated in the Complaint, and the point of diagnosis is the first mention of it. When the Plaintiff requested to go to the eye clinic, it was to get a new prescription for eyeglasses. But for now, whatever the exact cause of his symptoms, the Complaint allegations support the inference that his request to go to the eye clinic was a serious medical need for Eighth Amendment purposes because his condition significantly affected his activities and caused chronic pain.

However, the Plaintiff's well-pleaded facts must also be sufficient to permit the Court to infer more than the mere possibility that the Defendants acted with deliberate indifference to his medical needs. Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.,* the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

> Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless.

*Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to

5

show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even medical malpractice and incompetence do not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000).

**A.     Visit to Eye Clinic Delay**

**1.     *Defendants Nurse Conrad and Dr. Lewton***

According to the Complaint allegations, the only care or treatment that the Plaintiff requested on February 3, 2007, concerning his eyes was to get new eyeglasses, which he was entitled to receive once every two years without charge. The Plaintiff alleges no facts from which it can be inferred that he made the Defendants aware of the effect that not getting new glasses was having (or could have) on him, or that they otherwise were aware that he could not function with his current prescription. None of the pleaded facts suggest that the Plaintiff complained about a possible infection, or that the signs of an infection were obvious. The alleged facts do not support a claim that the Defendants knew of a substantial risk of harm to the Plaintiff and decided not to do anything to prevent that harm from occurring. When the Plaintiff was erroneously told by Defendant Conrad that he had to complete another form and make a second copayment, the Plaintiff filed a grievance to dispute the fee. The Plaintiff waited until this grievance was resolved (in his favor) on April 27, to file another request (on May 7) to see the eye doctor. It is not plausible to attribute the portion of his delay from February 3 to May 7 to deliberate indifference to the Plaintiff's serious medical need.

On May 7, 2007, the Plaintiff submitted a second form for admission to the eye clinic. Three days later, on May 10, the Plaintiff learned from Defendant Conrad that he was on the eye

6

clinic's waiting list, and that it sometimes took six to eight weeks to be seen. When the Plaintiff did not see the doctor within this time frame, he wrote to the Medical Administrator and the Unit Manager. The Unit Manager responded that he contacted the medical staff who informed him that the Plaintiff had to put in a request and that they would be glad to add him to the list. On July 12, the Plaintiff asked Defendant Conrad about the delay. She had him complete another health care request form and told him that she would again check on the status of his request. On August 2, the Plaintiff submitted a grievance regarding the denial of medical treatment. The Plaintiff saw the eye doctor on August 13, 2007, before his grievance was resolved.

Twelve weeks passed between the time Nurse Conrad first told the Plaintiff that he was placed on the waiting list and when he was examined by Doctor Lewton. A normal delay, according to the Complaint allegations, is six to eight weeks. There are no factual allegations to plausibly conclude that the delay was attributable to Nurse Conrad's conscious disregard of a substantial risk of serious harm. First, there are no facts from which it can be inferred that Defendant Conrad was put on notice that the ongoing request to see the eye doctor carried a substantial risk of serious harm to the Plaintiff if he did not immediately see the doctor. A request for an eye exam to get new glasses does not, by itself, suggest a serious condition. Although it is possible that Defendant Conrad was aware (either through her own observations or communication with the Plaintiff) that the Plaintiff's condition was more serious than simply not seeing as clearly as he would have with an updated prescription, the well-pleaded facts do not establish that it was plausible. Nor can it reasonably be inferred from the Complaint allegations that Defendant Conrad had any control over when the referral to the eye clinic would be satisfied after she put him on the waiting list. Without any control over this aspect of his care, it is not

7

plausible to conclude that any delay was attributable to her. Additionally, the Complaint allegations tend to support an inference about Nurse Conrad's subjective intent that is far from indifferent. Nurse Conrad reasonably responded to the Plaintiff when she informed him of the typical wait, and when that time passed, she took the steps to complete another form and to check on his status. For these reasons, the Complaint fails to set out an Eighth Amendment claim against Nurse Conrad.

The Plaintiff also names Dr. Lewton as a Defendant. But the Plaintiff does not make any allegation that the Plaintiff or anyone else contacted Dr. Lewton about the Plaintiff's need for an eye exam, or communicated to Dr. Lewton the potentially serious nature of his condition. Dr. Lewton cannot be held liable for disregarding a serious medical risk about which he had no knowledge. Accordingly, the Plaintiff does not state a claim against Dr. Lewton for the delay.

### 2. *Defendant C. Montgomery, Medical Administrator*

The only allegation that the Plaintiff makes against Defendant C. Montgomery, the Medical Administrator, is that he did not respond to his letter complaining about the delay in seeing an eye doctor. (Compl. 4). One implication from the Complaint is that Montgomery supervised the medical staff that was responsible for the delay. But "[s]ection 1983 does not establish a system of vicarious responsibility." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). Personal involvement is an element of every claim under 42 U.S.C. § 1983. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

> The doctrine of *respondeat superior* can not be used to hold a supervisor liable
> for conduct of a subordinate that violates a plaintiff's constitutional rights.
> Supervisory liability will be found, however, if the supervisor, with knowledge of
> the subordinate's conduct, approves of the conduct and the basis for it. That is, to

8

> be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct. Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

*Id.* at 651 (7th Cir. 2001) (citations, quotation marks, and brackets omitted) (ellipsis in original). The Plaintiff alleges that he made Montgomery aware of the delay by a letter he wrote on June 21, 2007. The fact that Montgomery did not respond is not sufficient to establish that he facilitated, approved, condoned, or turned a blind eye to a subordinates's violation of the Plaintiff's constitutional rights or to the substantial risk or serious harm. As already stated, the factual averments in the Complaint do not support an inference that prison staff was engaging in misconduct of constitutional magnitude. Neither do the pleaded facts suggest that the Plaintiff informed Montgomery that the delay in seeing the eye doctor was seriously impacting his health or interfering with his daily activities, such that he could have been subjectively aware of the Plaintiff's serious medical needs.

The Complaint allegations do not raise the right to relief against Montgomery above the speculative level, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Pleading facts that are merely consistent with a particular defendant's liability falls short of the plausibility required to set forth a claim. *Id.* The Plaintiff does not state a claim against Montgomery in his individual capacity.

## B. Prescription Medication Delay

On August 13, Dr. Lewton prescribed the Plaintiff medication for an eye infection and also prescribed new eyeglasses. Four days later, on August 17, the Plaintiff spoke to Nurse Wingo during "med pass" about his medication, and she said she would bring it to him when it came in. On August 21, the Plaintiff again spoke to Nurse Wingo about his medication, and she responded that she would check before leaving that day. The Plaintiff's claim against Nurse Wingo is that she did not check on the status of the medication, and that, had she done so, she would have discovered that his order for medication was never processed.

The next day, August 22, the Plaintiff filed a grievance concerning the delay in receiving prescribe medication. He also spoke to Nurse Conrad, who checked whether the medication had arrived with other medications that had been delivered the previous day. She then faxed an order for his medication to the pharmacy. On August 24, the Plaintiff received the medication and a couple of days later he received new eyeglasses.

The prison determined, through the grievance process, that the delay in filling the prescription occurred because the person who was responsible to put the order in the computer failed to do so. It is not reasonable to infer that this was anything more than a mistake. But negligence does not rise to the level of deliberate indifference so as to state a claim for cruel and unusual punishment. *See Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) ("Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk."); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) ("Neither negligence nor even gross negligence is a sufficient basis for liability."). The Plaintiff alleges facts that are inconsistent with a claim for deliberate indifference by Nurse Conrad. He states

10

that on the same day that he asked her about the medication, she checked on the status and faxed the order to the pharmacy. Although the alleged facts support an inference that Nurse Wingo could have discovered the error one day earlier, none of these facts support an inference that her state of mind when she failed to do so was one of deliberate indifference to the Plaintiff's serious medical needs, or that she intentionally interfered with his prescribed treatment.

### C. Official Capacity Claims

The Plaintiff states in the claim for relief section of his Complaint that he "is suing all defendants in their individual and official capacities." (Compl. 8.) He requests compensatory and punitive damages. (*Id.*) An official capacity suit is essentially one against the government entity itself. *Hadi v. Horn*, 830 F.2d 779, 782 (7th Cir. 1987). The Eleventh Amendment precludes a citizen from suing a state, including state officials in their official capacities, for money damages in federal court without the state's consent. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (finding that claims against the Indiana State Prison, the Indiana Department of Corrections, and correctional officials in their official capacities were immune from § 1983 suit for damages). Although there are three exceptions to this Eleventh Amendment bar—waiver, Congressional abrogation, and the *Ex Parte Young* doctrine, *see Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletic Department*, 510 F.3d 681, 695 (7th Cir. 2007) (describing the exceptions)—none are present here. First, Indiana has not waived its Eleventh Amendment immunity. *Meadows v. State of Ind.*, 854 F.2d 1068, 1069 (7th Cir. 1988); Ind. Code §§ 34-13-3-5(f) & 34-13-4-3. Also, the Supreme Court has held that Congress did not intend for § 1983 to disturb states' Eleventh Amendment immunity. *Will v. Mich. Dept. of State Police*, 491 U.S. 58,

63 (1989) (holding that states are not "persons" liable for damages under § 1983). The final exception is not implicated because the Plaintiff is not pursing injunctive relief for an ongoing violation of federal law. *See MCI Telecommunications Corp. v. Ill. Bell Tele. Co.*, 222 F.3d 323, 328, 336, 344–45 (7th Cir. 2000) (stating that the *Ex Parte Young* doctrine allows suits for prospective injunctive relief against the state to vindicate federal law).

The Plaintiff's official capacity claims for damages against officials of Westville Correctional Facility, an Indiana Department of Correction facility, are dismissed because these Defendants are immune from suit.

For the foregoing reasons, this case is dismissed pursuant to 28 U.S.C. § 1915A.

SO ORDERED on June 11, 2009.

                                              s/ Theresa L. Springmann  
                                             THERESA L. SPRINGMANN  
                                             UNITED STATES DISTRICT COURT  
                                             FORT WAYNE DIVISION